**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| HARRIS ELLIOT, : | |
| : | Civil Action No. 04-951 (RBK) |
| Petitioner, : | |
| : | |
| v. : | |
| : | **OPINION** |
| ROY L. HENDRICKS, et al., : | |
| : | |
| Respondents. : | |
| _____ : | |

**APPEARANCES:**

> HARRIS ELLIOT, Petitioner <u>Pro</u> <u>Se</u>
> #256789
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625

> JAMES F. SMITH, ESQ.
> Atlantic County Prosecutor's Office
> 4997 Unami Boulevard
> P.O. Box 2002
> Mays Landing, New Jersey 08330
> Attorneys for Respondents

**KUGLER, District Judge**

This matter is before the Court on petitioner Harris Elliot's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>PROCEDURAL BACKGROUND</u>

Petitioner, Harris Elliot ("Elliot"), is presently confined at the New Jersey State Prison in Trenton, New Jersey, serving a life sentence with 30 years of parole ineligibility.

Elliot was indicted by the Atlantic County Grand Jury in 1993 on charges of first degree robbery, felony murder, capital murder, weapons offenses, tampering with physical evidence, hindering apprehension, and theft and unlawful use of a credit card.  In a plea bargain with the State, Elliot agreed to enter a guilty plea in exchange for the State's withdrawal of its Notice of Aggravating Factors, among other things.  In addition, the remaining charges were to be dismissed, and the prosecutor agreed to recommend a life sentence with a 30-year parole disqualifier.  Pursuant to these terms of the plea agreement, Elliot was sentenced to a term of life imprisonment with a 30-year period of parole ineligibility on November 12, 1993.  Through counsel, Elliot appealed to the Superior Court of New Jersey, Appellate Division, solely on the grounds that his sentence was excessive and unduly punitive.  The Appellate Division dismissed the appeal on March 8, 1995 after petitioner's counsel withdrew the appeal.[1]

---

[1]  Petitioner's counsel represented at the oral argument on appeal that he had received no response to a letter he had sent to the petitioner.

2

Thereafter, in September 1997,[2] Elliot filed a state post-conviction relief ("PCR") petition, alleging claims of ineffective assistance of trial counsel.  The trial court initially declined to file the PCR petition because it was not submitted in compliance with the state court rules governing PCR proceedings.  Elliot appealed, and in an opinion dated February 25, 2000, the Appellate Division ordered that the petition be filed forthwith.  (Ra 188-190).  On March 16, 2001, a hearing was held on the PCR petition with arguments by counsel for the parties.  The PCR court denied relief at the conclusion of the hearing and issued a conforming Order dated March 27, 2001.  (Ra 182).

Elliot appealed and the Appellate Division affirmed denial of post-conviction relief in a written decision rendered on October 10, 2002.  (Ra14-18).  The New Jersey Supreme Court denied certification on March 28, 2003.

Elliot filed this habeas petition on or about March 1, 2004.  Respondents answered the petition, and provided the relevant state court record, on or about August 13, 2004.

---

[2]  The respondents dispute the date on which petitioner allegedly filed his state post-conviction relief ("PCR") petition.  Elliot claims that he filed his state PCR petition on September 8, 1997.  The State contends that the PCR petition was dated September 30, 1997.

3

## II.  CLAIMS FOR HABEAS RELIEF

Elliot raises the following claims of ineffective assistance of counsel in his federal habeas petition: (1) trial counsel failed to investigate and prepare a defense to the capital murder charge, namely, a diminished capacity defense based on intoxication; (2) trial counsel failed to investigate and prepare a passion/provocation manslaughter defense to the capital murder charge based on petitioner's romantic relationship with the victim; (3) trial counsel generally failed to conduct pretrial investigation and prepare a defense for trial, but instead, "coerced" petitioner into a guilty plea; and (3) appellate counsel failed to conduct an investigation as to all appealable issues relevant to petitioner's case.  Elliot also alleges that the trial court erred in denying an evidentiary hearing on the ineffective assistance of counsel claims.

In response to the petition, the State raises the affirmative defense that petitioner failed to exhaust his state court remedies.[3]  The State also argues that there is no merit to

---

[3]  The respondents never raised the affirmative defense that Elliot's habeas petition is time-barred.  The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A) the date on which the judgment became final by

4

the conclusion of direct review or the expiration of
the time for seeking such review; ...

(2) The time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this section.

Section 2244(d) became effective on April 24, 1996 when the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
was signed into law.  See Burns v. Morton, 134 F.3d 109, 111 (3d
Cir. 1998); Duarte v. Herschberger, 947 F. Supp. 146, 147 (D.N.J.
1996).  The Third Circuit has ruled that state prisoners whose
convictions became final before the April 24, 1996 enactment of
AEDPA are permitted one year, until April 23, 1997, in which to
file a federal habeas petition under § 2254.  See Burns, 134 F.3d
at 111.  A state-court criminal judgment becomes "final" within
the meaning of § 2244(d)(1) by the conclusion of direct review or
by the expiration of time for seeking such review, including the
90-day period for filing a petition for writ of certiorari in the
United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417,
419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d
Cir. 1999); U.S. Sup. Ct. R. 13.  Section 2244(d) also provides
that the one-year limitations period shall be tolled during the
time in which a properly filed state PCR petition is pending.  28
U.S.C. § 2244(d)(2).  Thus, pursuant to § 2244(d), evaluation of
the timeliness of a § 2254 petition requires a determination of,
first, when the pertinent judgment became "final," and, second,
the period of time during which an application for state post-
conviction relief was "properly filed" and "pending."

Here, the judgment of conviction in this case became final
before the enactment of AEDPA on April 24, 1996.  Therefore,
Elliot had until April 27, 1997 within which to file his federal
habeas petition.  He did not file his federal habeas petition
until March 1, 2004.  There was no tolling of the limitations
period based on his state PCR petition because Elliot's state PCR
petition was not filed until September 1997, almost five months
after the limitations period had expired.  Nevertheless, while it
appears to the Court that this petition was not timely presented
under § 2244(d)(1), the Court may not sua sponte dismiss the
petition on this ground if the respondents, being required to
raise any affirmative defenses in their answer to the petition,
fails to assert a statute of limitations defense.  See Robinson v
Johnson, 313 F.3d 128, 137 (3d Cir. 2002), cert. denied, 124

petitioner's claims.  To the extent any of the claims asserted by Elliot in this petition were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  <u>See also</u> <u>Lambert v. Blackwell</u>, 134 F.3d 506, 514-15 (3d Cir. 1997), <u>cert</u>. <u>denied</u>, 532 U.S. 919 (2001)(a district court may deny a petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), where "it is perfectly clear that an applicant does not raise even a colorable federal claim").

### III.  <u>STANDARD GOVERNING REVIEW OF § 2254 CLAIMS</u>

The Court recognizes that a <u>pro</u> <u>se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro</u> <u>se</u> habeas petition should be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Duarte v. Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Elliot is a <u>pro</u> <u>se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro</u> <u>se</u> petitioners.

---

S.Ct. 48 (2003); <u>Stewart v. Hendricks</u>, 71 Fed.Appx. 904, 906 (3d Cir. 2003).

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the

7

state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines

that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. <u>Id</u>. AEDPA prohibits such *de novo* review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. <u>Id</u>. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." <u>Id</u>.; <u>see also</u> 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. <u>See</u> <u>Duncan</u>, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of

9

the state court's factual findings." Mastracchio v. Vose, 274
F.3d 590, 597-98 (1st Cir. 2001).

## VI.  ANALYSIS

### A.  Ineffective Assistance of Counsel Claims

The "clearly established Federal law, as determined by the
Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is
the standard for ineffective assistance of counsel as enunciated
in Strickland v. Washington, 466 U.S. 668 (1984).  Under
Strickland, a petitioner seeking to prove a Sixth Amendment
violation must demonstrate that his counsel's performance fell
below an objective standard of reasonableness, assessing the
facts of the case at the time of counsel's conduct.  Id. at 688-
89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v.
Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973
(2001).  Counsel's errors must have been "so serious as to
deprive the defendant of a fair trial, a trial whose result is
reliable." Strickland, 466 U.S. at 688.  "In any case presenting
an ineffectiveness claim, the performance inquiry must be whether
counsel's assistance was reasonable considering all the
circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every

10

> effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1. *Trial Counsel Failed to Investigate and Prepare a Defense Based on Diminished Capacity.*

Elliot states in his petition that, on the evening of March 9, 1993, he was under the influence of marijuana, cocaine, and alcohol. He further states that his appointed counsel was aware of petitioner's intoxication yet failed to investigate and prepare a defense based on diminished capacity.

In denying Elliot's state PCR petition, the Honorable Michael R. Connor, J.S.C. stated, in pertinent part:

> There is no mental disease or defect defense posed by the contents of that particular report[4] and indeed, that report was successfully, however, used to engage in plea negotiations and to take this case from a capital charge to a life prison term, essentially utilizing this report to potentially save the life of this defendant. There is nothing whatsoever ... to indicate any incompetence of counsel and indeed, there is nothing to meet either the first or the second prong of [Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]. There is (a) no indication whatsoever that counsel acted inappropriately in ... not endeavoring to use this as some form of defense to the underlying charge itself. It's not helpful in that particular respect and indeed, could be harmful to the defendant.

(March 16, 2001 PCR Transcript, 9:25-10:13).

The Appellate Division affirmed, also finding that Dr. Sadoff's June 25, 1993 report failed to establish a defense, but instead was submitted by counsel to demonstrate mitigation sufficient to avoid exposure to the death penalty. The appellate

---

[4] The report referenced was that of Dr. Robert L. Sadoff, a psychiatrist, dated June 25, 1993, that outlined several mitigating factors to the capital murder charge. (Ra 68-70).

court found that Elliot failed to meet either prong of the
Strickland test, even on a prima facie basis.  (Ra 16, Appellate
Division Opinion decided October 10, 2002, at pg. 5).

     This Court has reviewed the record and, in particular, Dr.
Sadoff's report.  Dr. Sadoff examined petitioner at the direction
and request of Elliot's trial counsel for the purpose of
determining any "mitigating factors with respect to the death
penalty in the event that Mr. Elliot is found guilty of murder."
(Ra 68-70, June 25, 1993 Report of Robert L. Sadoff, M.D.).  Dr.
Sadoff stated that Elliot had admitted to taking an "eight ball"
of cocaine, two or three hits of marijuana, and drinking a 40
ounce bottle of Old English Malt liquor on the night of the
murder.  Elliot had stated that he was "buzzed" at the time.  (Ra
68-69).  While Dr. Sadoff noted Elliot's age at the time, his
insignificant prior criminal history, and that he may have acted
in anger and passion due to a past romantic relationship with the
murder victim, Dr. Sadoff concluded that Elliot "knew what he was
doing and knew that what he was doing was wrong and had the
capacity to appreciate the wrongfulness of his conduct and the
capacity to conform his conduct to the requirements of the law."
(Ra 70).

     Looking at the record, there is no question that trial
counsel investigated the possibility of a diminished capacity
defense, and based on Dr. Sadoff's report determined that, at

best, he could argue mitigating factors to avoid the death penalty.  Furthermore, given the brutal nature of the killing,[5] Elliot's confession to the police, and the expert's opinion on Elliot's culpable state of mind, defense counsel was left with no viable defenses that would have likely resulted in an acquittal of all charges or a conviction on a lesser-included offense to knowing and purposeful murder.

Accordingly, this Court finds nothing to indicate that the state court decisions were based on an unreasonable application of the facts.  Nor were the decisions contrary to established federal law.  Both the PCR court and the Appellate Division adhered to the Strickland standard, and found neither deficient performance by counsel nor prejudice to satisfy the two-pronged test under Strickland.  Elliot has not demonstrated to this Court that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Therefore, this first ground of ineffective assistance of counsel is denied for lack of merit.

---

[5] Elliot had admitted hitting the young woman in the head with a hammer three or four times, and then stabbed her in the chest and cut her throat with a serrated knife.

14

    2.  *Failure to Investigate and Prepare Passion/Provocation Defense*.

In a similar vein, Elliot alleges that his trial counsel was ineffective in failing to investigate and prepare a passion/provocation manslaughter defense to the capital murder charge based on petitioner's romantic relationship with the victim.  Dr. Sadoff's report discusses Elliot's admission of a sexual relationship with the victim.  Elliot had known the victim for two years and considered her "like a girlfriend".  (Ra 68). In Elliot's statement to the police, Elliot admitted that he had gone to the victim's apartment to collect $300 she owed petitioner for marijuana.  Elliot stated that they argued because she refused to pay him.  Dr. Sadoff opines that petitioner killed the victim "in an anger and passion with respect to the victim as a result of his relationship with her and the argument they had." (Ra 70).  However, in the same sentence, Dr. Sadoff concluded that petitioner knew what he was doing, that he knew it was wrong, and that he had the capacity to conform his conduct to the law.  (Ra 70).

For the same reasons as stated in this Opinion above, the Court does not find that trial counsel's representation of petitioner with respect to this defense issue was deficient or prejudicial.  Counsel was aware of the relationship and fight between the victim and Elliot.  The Appellate Division found that

the report of Dr. Sadoff plainly failed to establish a viable
defense, and that petitioner was unable to satisfy either prong
of the Strickland test, even on a prima facie basis.  (Ra 18).

Thus, this Court again finds nothing in the record, or
presented by petitioner in his habeas petition, to indicate that
the state court decisions were based on an unreasonable
application of the facts.  Nor were the decisions contrary to
established federal law.  The state courts adhered to the
Strickland standard, and concluded that neither prong of the
Strickland test had been satisfied.  Furthermore, Elliot has not
demonstrated to this Court that the state court decisions, when
evaluated objectively and on the merits, resulted in an outcome
that cannot be reasonably justified.  Matteo, 171 F.3d at 891.
Accordingly, this second ground of ineffective assistance of
counsel is denied for lack of merit.

3.  *Failure to Prepare a Defense/Coercion of Guilty Plea*

"[A]n attorney must investigate a case, when he has cause to
do so, in order to provide minimally competent professional
representation."  United States v. Kauffman, 109 F.3d 186, 190
(3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir.
1990)(counsel has a duty to investigate or to make a reasonable
decision that makes particular investigations unnecessary).  When
assessing an ineffectiveness claim based on failure to
investigate, a court must assess the decision not to investigate

16

"for reasonableness in all the circumstances, applying a heavy
measure of deference to counsel's judgments." Strickland, 466
U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see
also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied,
534 U.S. 919 (2001).  "[S]trategic choices made after less than
complete investigation are reasonable precisely to the extent
that reasonable professional judgments support the limitations on
investigation." Strickland, 466 U.S. at 691-92.  Even if counsel
was deficient in his decision not to investigate, a petitioner
must show a reasonable likelihood that, but for the deficiency,
the result of the proceeding would have been different.  Lewis,
915 F.2d at 115.

     In this third claim, Elliot appears to argue that his trial
counsel failed to investigate and a prepare a defense which
resulted in a coerced guilty plea by petitioner.  In asserting an
ineffective assistance of counsel claim in the context of a
guilty plea, petitioner must show that his counsel's performance
was deficient and that the deficient performance caused
petitioner to reach a different decision with respect to his
plea.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

     As to the first prong asserting deficient performance, it is
plainly evident that trial counsel conducted an investigation to
determine whether there was a viable defense of diminished
capacity to the capital murder charge.  In fact, counsel had

retained an expert, Dr. Sadoff, on the issue, and Dr. Sadoff's report did not support a diminished capacity defense. However, Dr. Sadoff's report expressly found that Elliot understood the nature and quality of his crime and knew that it was wrong. Thus, counsel used the report to demonstrate mitigating factors sufficient to avoid the death penalty in petitioner's capital case.

Furthermore, Elliot has failed to produce any evidence that counsel coerced him into a guilty plea, or was deficient in informing petitioner about the consequences of a guilty plea. The record does not contain any hint or suggestion that Elliot did not understand the charges against him, the consequences of a plea, or that he was, in fact, coerced into a plea agreement. At best, petitioner's application is based on hindsight; he presumes that a diminished capacity defense was viable and would have resulted in a conviction on a lesser offense than knowing and purposeful murder. Elliot does not show that he disagreed with his attorney's assessment at the time, or that there was other evidence sufficient to support a viable defense to the murder and related charges. Therefore, under these circumstances, there is no indication that trial counsel was deficient in his representation of Elliot or in recommending a guilty plea.[6]

---

[6] The State failed to provide a transcript of the plea, which this Court presumes took place on September 30, 1993. However, there is no suggestion that petitioner was not informed

Counsel did investigate and prepare the best defense available under the circumstances of this case. Indeed, counsel's actions in retaining an expert witness to provide mitigation against imposition of the death penalty constitutes sound and reasonable trial strategy, especially when the evidence in the case strongly indicated the likelihood of a conviction for capital murder.

To satisfy the "prejudice' prong in evaluating a claim of ineffective assistance of counsel in the context of a guilty plea, petitioner must show that, but for counsel's errors, he would not have pleaded guilty or would have insisted on going to trial. Here, it is plain from the record provided in this case that there was substantial evidence of petitioner's guilt on the charge of murder. Petitioner admitted his guilt in a statement to the police. He described the brutal and heinous nature of the killing, and there was his own expert's report that found petitioner possessed a culpable state of mind for knowing and purposeful murder. Dr. Sadoff expressly stated that Elliot knew

---

by his counsel as to petitioner's right to a jury trial or of the consequences of his plea. The plea form was attached to the respondents' appendix, and it notes that Elliot understood the charges against him, and that he understood the constitutional rights he would be waiving by a guilty plea, and that he understood the consequences of a guilty plea. Based on the plea form, and the complete lack of evidence that would indicate coercion, there is absolutely no merit to Elliot's contention that he was forced by counsel to plead guilty unknowingly or involuntarily.

19

and understood the nature and quality of his actions and knew that what he did was wrong.  (Ra 70).

Thus, it seems abundantly clear that acceptance of a guilty plea in this case served to avoid a trial for capital murder and the potential for the death penalty.  At the very least, even if petitioner would have been tried, he would have been convicted based on the strong evidence against him, resulting in the same or similar outcome as achieved by the guilty plea.

Therefore, not having shown any deficiency in his counsel's performance or any resulting prejudice, as set forth in this Opinion above, this claim fails on the merits and will be denied accordingly.

4. *Ineffective Assistance of Appellate Counsel*

Elliot also broadly asserts that his appellate counsel was ineffective for failing to raise on direct appeal the ineffective assistance of trial counsel claims, as asserted in this habeas petition.  He raised this claim against appellate counsel in his PCR petition.  The PCR court found that appellate counsel was not deficient.  The court also determined that there was no showing by petitioner that the result would have been any different than the determination made at the PCR proceeding.  (March 16, 2001 PCR Transcript, 10:14-23).  Moreover, the Appellate Division determined that this claim had no merit.  (Ra 8-12).

20

Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard previously discussed. See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004). In order to prevail on a claim that appellate counsel was ineffective, Elliot must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Based on review of the record, this Court finds that Elliot fails to establish deficient performance by appellate counsel. He also fails to demonstrate how any alleged failure by appellate counsel would have had any reasonable potential for affecting the outcome of the appeal. Therefore, this Court cannot conclude that the determination of this issue by the state courts resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact. Williams v. Taylor, supra. This claim will be denied accordingly.

B.  The State Court Erred in Denying an Evidentiary Hearing

In this last claim for relief, Elliot generally asserts that the PCR court declined to grant him an evidentiary hearing on the issue of whether his trial counsel was ineffective.

Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  See, e.g., Ferguson v. State, 1996 WL 1056727 (D.Del. 1996) and cases cited therein. Furthermore, as a general rule, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

22

Here, it may be construed that Elliot is asserting that the PCR court's denial of an evidentiary hearing violated due process.  Thus, the appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt."  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In this case, a careful review of the PCR proceedings and the state court rulings reveal that Elliot failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing. The Court finds that the state PCR court committed no error of a constitutional dimension.  Further, there is no showing that the state court determinations "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Williams</u>, 529 U.S. at 412-13.  Therefore, this last claim is denied for failure to show deprivation of a federal constitutional right.

V.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

DATED: November 30, 2005

25